RUSK INDUSTRIES, INC., Appellant,

v.

HOPKINS COUNTY TAX APPRAISAL DISTRICT and Hopkins County Appraisal Review Board, Appellees.

No. 6–91–007–CV.

Court of Appeals of Texas,
Texarkana.

Sept. 24, 1991.

112

Dan K. Parchman, Mt. Vernon, for appellant.

Russell R. Graham, Deborah S. Cartwright, Calame, Linebarger & Graham, Austin, for appellees.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

OPINION

GRANT, Justice.

Rusk Industries, Inc. appeals from an adverse judgment rendered in favor of Hopkins County Tax Appraisal District and Hopkins County Appraisal Review Board (referred to collectively as Tax Appraisal District) in a suit in which Rusk Industries protested the valuation and appraisal of its land for tax purposes.

Rusk Industries is a family-owned corporation, and the land in question was used for raising beef cattle. Its pastureland contained no hybrid forages that were recognized as improved pasture. About sixty acres had been planted in rye grass and clover. Rusk Industries contends that the trial court's findings of fact erroneously state the guidelines for the valuation of agricultural land; that the trial court's findings of fact are against the great weight and preponderance of the evidence; that the valuation of its property was not ascertained as provided by law; that the property was excessively and unequally appraised; that the court erred in failing to award it reasonable attorney's fees; and that the trial court failed to timely mail a copy of its findings of fact and conclusions of law to Rusk Industries.

■ In a case tried before the court, findings of fact have the same force and effect as jury answers to special questions and are treated with the same dignity on appellate review. *DeBenavides v. Warren*, 674 S.W.2d 353, 356 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). The trial court entered the following findings of fact:

1. The property which is the subject of this cause of action consists of 691.63 acres of land owned by Plaintiff and qualified as open-space land pursuant to Chapter 23, Texas Tax Code, in Tax Year 1986.

2. Defendant Appraisal District appraised all pasture in Hopkins County in 1986 as one category of land at $200 per acre based on a weighted average computation of productivity values.

3. Only two percent (2%) of pasture in Hopkins County had native grasses located thereon in 1986.

4. The majority of pasture in Hopkins County was improved through the planting of introduced grasses, fertilizing, and other methods in 1986.

5. The February 1982 *Guidelines for the Valuation of Agricultural Land* published by the State Property Tax Board provides that separate categories of land should not be established when only a few acres are devoted to a specific use; typical use categories are required.

6. The February 1982 *Guidelines for the Valuation of Agricultural Land* published by the State Property Tax Board provides for calculating values based on percentage combinations or averaging of principal agricultural enterprises into a single land category.

7. The property which is the subject of this cause of action was correctly appraised at $200 per acre in 1986.

Based upon the foregoing findings of fact, the trial court entered the following conclusion of law:

Plaintiff's property which is the subject of this cause of action was neither excessively nor unequally appraised by Defendants in 1986 pursuant to Sections 23.51–23.53, 42.25, 42.26, and 1.12, Texas Tax Code (Vernon's 1982) and the guidelines adopted by rule by the State Property Tax Board of Texas.

TEX. CONST. art. VIII, § 1–d instructs the Legislature to promote the preservation of open-space land by passing a general law for the taxation of open-space land devoted to farm and ranch purposes on the basis of the land's productive capacity. Rusk Industries takes the position that the erroneous methodology used to calculate its land value resulted in the excessive valuation of $200 per acre, for a total of $136,326, when a correct valuation would have been $91.29 per acre, for a total of $63,139.

■ We shall first address Rusk Industries' complaints that the trial court erred in its statements summarizing STATE PROPERTY TAX BOARD, GUIDELINES FOR THE VALUATION OF AGRICULTURAL LAND (Feb. 1982).

The first guideline included in the findings of fact was as follows:

5. The February 1982 *Guidelines for the Valuation of Agricultural Land* published by the State Property Tax Board provides that separate categories of land should not be established when only a few acres are devoted to a specific use; typical use categories are required.

The Guidelines specifically provide:

If only a few acres of land are devoted to a specific use, the category should not be established. Rather, the few acres devoted to that use should be placed in a more typical use category. In these cases, care should be taken to place these few acres into a category with the same or similar productive capacity values.

We find that the trial court correctly paraphrased this guideline.

Rusk Industries also complains about the following finding of fact:

6. The February 1982 *Guidelines for the Valuation of Agricultural Land* published by the State Property Tax Board provides for calculating values based on percentage combinations or averaging of principal agricultural enterprises into a single land category.

The appraised value of qualified open-space land is determined on the basis of the category [1] of the land, using accepted income capitalization methods applied to average net to land.[2] TEX.TAX CODE ANN. § 23.52(a) (Vernon 1982). When the five-year average for each of the principal enterprises in the land class has been determined, one step remains. This is the combining of the five-year net to land averages for the principal enterprises into a single net to land value for the land class. GUIDELINES FOR THE VALUATION OF AGRICULTURAL

LAND, at 21. This guideline was properly paraphrased by the trial court in finding of fact six. The point of error alleging that the trial court misstated the controlling guidelines is overruled.

We shall next consider Rusk Industries' points of error contending that two of the court's findings of fact were made against the great weight and preponderance of the evidence. Rusk Industries challenges the trial court's finding of fact that "[o]nly two percent (2%) of pasture in Hopkins County had native grasses located thereon in 1986" and that "[t]he majority of pasture in Hopkins County was improved through the planting of introduced grasses, fertilizing, and other methods in 1986."

■ In reviewing a great weight argument, because the burden of proof is on the appellant, the appellant must show that the finding of fact was so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. In reviewing these points, we shall examine all of the evidence in the record that is relevant to the fact being challenged. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442 (Tex. 1989); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ There is some confusion in the record in the use of the terms native grass and native pasture. There was testimony that when Hopkins and Rains Counties were first settled they were made up of claypan prairies, which were grassy plains that were nearly treeless. The primary vegetation was "big blue stems, Indian grass, little blue stem, and the tall crop seed." However, by the year 1900, when the land was fully settled, most of the areas of the prairie had been cleared and

---

1. The term *category* is defined in TEX.TAX CODE ANN. § 23.51(3) (Vernon 1982) as follows:

"Category" means the value classification of land considering the agricultural use to which the land is principally devoted. Categories of land include but are not limited to irrigated cropland, dry cropland, improved pasture, native pasture, orchard, and waste and may be further divided according to soil type, soil capability, irrigation, general topography, geographical factors, and other factors which in-

fluence the productive capacity of the category.

2. In 1986, net to land was defined as the average annual net income derived from the use of open-space land that would have been earned from the land during the five-year period preceding the appraisal by an owner using ordinary prudence in the management of the land and the farm crops or livestock produced or supported on the land. TEX.TAX CODE ANN. § 23.51(4) (Vernon 1982).

cultivated. Thus, only two percent of acreage remained with native grass in 1986. This does not mean that all of the rest of the land is improved pasture, but rather that at one time or another it had been cultivated and that the present vegetation is no longer the same as it was prior to the cultivation. The chief appraiser for the Tax Appraisal District testified that there was no substantial portion of Hopkins County left with native grass and pasture, that between 8,000 and 9,000 acres of native grassland existed in the county, and that the native grassland constituted less than two percent of the total agricultural land. There was no evidence contradicting this estimate. This finding of fact was not against the great weight and preponderance of the evidence. The point of error challenging this finding is overruled.

Next, we shall examine Rusk Industries' challenge to the trial court's finding that in 1986 the majority of pasture in Hopkins County was improved through the planting of introduced grasses, fertilizing, and other methods. The following formula was introduced into evidence and reflects how the Tax Appraisal District made its determination of the final valuation of pastureland:

| | | |
|---|---|---|
| Established Coastal Bermuda Grass | —$290.00 per acre @ 40% weighted factor | = $116.00 |
| Native pasture | —$140.00 per acre @ 60% weighted factor | = $ 84.00 |
| PASTURELAND—ASSIGNED VALUE PER ACRE | | $200.00 |

The Tax Appraisal District offered testimony that this schedule used for setting the tax for agricultural productivity was both reasonable and representative of the agricultural productivity value in Hopkins County. This, however, does not support the court's finding that in 1986 a majority of the pasture in Hopkins County was improved through planting of introduced grasses, fertilizing, and other methods, and the Appraisal District has pointed out no evidence in the record to support that finding. This schedule suggests that forty percent of the pastureland had been improved by the establishment of coastal bermuda grass. There was a question suggesting that the native grass on the majority of the land had been replaced by "introduced grasses," but there was no evidence that the majority of land had been improved through fertilization and other methods, or even that the replacement grasses were improvements over the native grasses. We must conclude that this finding is against the great weight and preponderance of the evidence because there is no evidence to support it. We sustain Rusk Industries' point of error.

Pursuant to Rule 81 of the Texas Rules of Appellate Procedure, we must determine whether this error was reasonably calculated to cause and probably did cause the rendition of an improper judgment or probably prevented the appellant from making a proper presentation of the case to the appellate court. We find that the trial court's finding was not harmful because it was not essential to the trial court's decision. Whether or not the majority of pastureland in Hopkins County was improved through the planting of introduced grasses, fertilizing, and other methods in 1986 was not controlling in a determination of the valuation of Rusk Industries' property. As previously mentioned, there was testimony that the majority of the land had been cultivated. However, this cultivation could have been the planting of row crops and thus would not have necessarily supported the trial court's finding. Nevertheless, this finding was not essential to the conclusion of the trial court and amounts to no more than surplusage. We conclude that this finding does not constitute a reversible error.

We shall next discuss Rusk Industries' contentions that the valuation of its property was not ascertained as provided by law. Rusk Industries complains that the Tax Appraisal District used income only from hay production and thus omitted milk and beef production, which are two of the principal enterprises in the county. The Tax

Appraisal District responds that the crop grown for use in all of these enterprises is the same: grass.

The Guidelines state that the procedure for reaching the net return to land must be carried out "for each of the principal crops within the land category. (Example: If cotton and grain sorghum are the principal crops on Dryland Cropland I acreage, then two budgets must be completed before an agricultural use value can be determined for Dryland Cropland I.)"

■■■ The Tax Appraisal District correctly contends that those involved in the beef and milk industry grow grass, just as those involved in the raising of hay. This, however, construes the meaning of the word *crop* too narrowly. A *crop* is defined as a plant or animal or plant or animal product that can be grown and harvested extensively for profit or subsistence. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 308 (1985). Thus, the crop of a dairy farmer is milk, and the crop of a beef producer is beef. According to testimony not disputed by the Tax Appraisal District, the primary agricultural enterprise in Hopkins County was dairy farming and the second primary enterprise was beef production. Hay production came in third. These principal enterprises should have been included within the category of pastureland, and their net to land yield should have been given a weighted average in arriving at an average net to land for the category of pastureland into which they were classed.

In determining productive capacity value, the Tax Appraisal District arrived at a figure described as *net to land.* Net to land is defined as the average annual net income derived from the use of open-space land that would have been earned from the land during the five-year period preceding the appraisal by an owner using ordinary prudence in the management of the land and the farm crops *or livestock* produced or supported on the land. TEX.TAX CODE ANN. § 23.51(4).[3]

■■■ Rusk Industries did not introduce evidence that supported its contentions that the failure of the Tax Appraisal

District to include milk and beef production caused any difference in the value of its property. Even when taxes have been assessed through the use of a fundamentally erroneous plan of valuation, the taxpayer must show substantial injury. *Williams v. Smith,* 613 S.W.2d 562, 564 (Tex.Civ. App.—Austin 1981, no writ). Proof of substantial injury means the taxpayer must prove that his taxes in dollars and cents are substantially higher because of the alleged arbitrary plan of taxation. *Pierce v. City of Jacksonville,* 403 S.W.2d 512, 518 (Tex. Civ.App.—Tyler 1966, writ ref'd n.r.e.). To prove that the appraisal figure of its property was incorrect, Rusk Industries had the burden to prove that the inclusion of typical beef- and milk-producing property at · the properly weighted average would have reduced the appraised value of its property. Thomas Swafford, the president of Rusk Industries, offered an owner/operator budget that he prepared. He testified that it included most of the things that he did in his operation and that he used some materials from the Texas Agriculture Extension Service and from other sources that make it a more typical budget as opposed to his individual budget. Typical is defined as "that which is most likely to occur." TEX. TAX CODE ANN. § 23.41(d) (Vernon 1982) sets forth the sources of information to be used in calculating average net income for each type of agricultural operation. The Guidelines further specify the sources and methods of arriving at typical figures for determining net to land values. The trial judge was not required to accept Swafford's testimony as establishing a valid typical net to land income for beef production, and no evidence was offered to establish the budget of a milk-producing enterprise. Thus, Rusk Industries has not shown that the failure to include these enterprises resulted in higher taxes on its land.

■■■ Rusk Industries further contends that its taxes would be lower if it were not placed in the same category as the pastures improved with coastal bermuda.

The Guidelines state:

owner of the land under a typical lease arrangement for that category of land. TEX.TAX CODE ANN. § 23.51(4) (Vernon Supp.1991).

---

**3.** After 1986, this statute was changed to limit the method of calculating net to land to consideration of the income that would be due to the

From a practical standpoint, it is impossible to develop a classification system which will reflect all minor differences in productive capacities. Therefore, the appraiser should use common sense in [subdividing] categories to reflect only significant differences in productive capacities.

In areas where soil surveys are available, this information can be extremely helpful in establishing categories and subcategories. Soil types can be grouped to reflect the productive capacities within reasonable ranges and to limit the number of subcategories established.

The Tax Appraisal District contends that it created one category for pasture because the soil throughout the county was basically the same and because there was not sufficient acreage for a separate native grass category. The Tax Appraisal District contends that since the native grass constituted only two percent of the total pastureland in the county, categories should not be established and that this land should be placed in a more typical use category. The Guidelines prescribe categories to establish between *principal* types of agricultural uses. Native grass could not be considered a principal use when it involved such a small percentage of the total acreage. Thus, the only category created was for pastureland, and this was divided into improved and unimproved acreage for the "crop mix."

The expert witnesses agreed that the usage that was to be measured did not include management decisions, such as whether to grow fertilized coastal bermuda or some other grass. There was testimony that the primary difference between native pasture and improved pasture was a difference relating to management. According to the Guidelines, the typical approach for establishing net to land is reflected by neither extremely good nor extremely bad management.

Rusk Industries argues that the word *capacity* in the statute did not mean capability and that *capacity* reflected only the value based upon the present use of the land and not a value based upon any potential use. *Capacity* essentially means the facility or power to produce, and for the purposes of this statute, it is synonymous with capability. The taxation is based on the land's productive capacity and is not determined by the actual profit or production obtained from the specific tract of land being taxed; rather, it is determined according to what a typical tract of land can produce. We agree that the major enterprises of milk production and beef production should have been included in the valuation process, but Rusk Industries has not demonstrated that it was harmed by the omission. It is possible that these enterprises would have increased the valuation of Rusk Industries' land.

Rusk Industries next contends that the property was excessively and unequally appraised. Rusk Industries cites *City of Dallas v. Union Tower Corp.*, 703 S.W.2d 275 (Tex.App.—Dallas 1985, writ ref'd n.r.e.), for the proposition that whenever some property is assessed at a ratio substantially lower than the ratio applied to other property of a similar nature, discrimination is established that entitles the taxpayer to relief under the constitutional requirement that taxes be equal and uniform. In the *City of Dallas* case, the court was dealing with property that the law required to be valuated at the full market value. In the present case, pursuant to a provision in the Texas Constitution, the property is permitted to be valuated on the basis of its productive capacity without regard to the actual value of the property.

█ Rusk Industries also cites *Bullock v. Sage Energy Co.*, 728 S.W.2d 465 (Tex. App.—Austin 1987, no writ), to show that taxing members of the same class differently is a violation of the constitutional requirements of equal and uniform taxation. Rusk Industries has not shown such a distinction in the present case because all pastures having the same soil type and productive capacities were appraised in accordance with the statutory formula for open-space land. Rusk Industries has elected to receive a tax benefit on the basis of this provision. Rusk Industries has not shown that its property was appraised excessively or unequally. These points of error are overruled.

Rusk Industries contends that the trial court erred in failing to award it reasonable attorney's fees in the amount of $5,000. TEX.TAX CODE ANN. § 42.29 (Vernon Supp.1991) provides for such attorney's fees for a taxpayer who prevails in an appeal under TEX.TAX CODE ANN. § 42.25 (Vernon 1982) or § 42.26 (Vernon Supp. 1991). Rusk Industries has not prevailed. The point of error is overruled.

■■■ Rusk Industries contends that the trial court erred in its failure to timely mail to Rusk Industries a signed copy of its findings of fact and conclusions of law as required by TEX.R.CIV.P. 297. Rusk Industries complains that because it did not have proper notice, it was deprived of its opportunity to request additional or amended findings of fact or conclusions of law as allowed by TEX.R.CIV.P. 298. However, Rusk Industries has not suggested any additional or amended findings of fact or conclusions of law that were omitted by the trial court. Therefore, applying the standard that we have previously set forth for determining harmful error pursuant to TEX. R.APP.P. 81(b)(1), we have determined that this error did not result in an improper judgment in the case and that it did not prevent the appellant from making a proper presentation of its case on appeal. This point of error is overruled.

The judgment of the trial court is affirmed.